TONY WELLS,       )
             )
   Petitioner,     )
             )
   v.         )
             )   **ORDER**
UNITED STATES OF AMERICA,  )
             )
   Respondent.    )
_____ )

   **THIS MATTER** is before the Court on Petitioner's Writ of Habeas Corpus pursuant to

28 U.S.C. §2255 (Document #1) filed March 15, 2009. On July 15, 2009 the Government filed a

Motion for Summary Judgment (Document #6) as to all issues raised in Petitioner's Motion to

Vacate, Correct, or Amend his sentence pursuant to 28 U.S.C. §2255. Petitioner filed a Response

in Opposition to the Government's Motion (Document #7) on August 3, 2009. This matter is

now ripe for disposition.

## I. BACKGROUND

   Petitioner Tony Wells was indicted by the Grand Jury for the Western District of North

Carolina on April 25, 2005, and charged, along with four co-defendants, with conspiracy to

possess with intent to distribute at least 500 grams of methamphetamine in violation of 21

U.S.C. §§ 841 and 846. (*See* Case No. 5:05-cr-32, Doc. 1.) On April 27, 2005, the Government

filed a notice pursuant to 21 U.S.C. § 851, informing Petitioner of the Government's intent to

seek enhanced penalties because of a prior felony drug offense for which Petitioner was

convicted in Yadkin County, North Carolina on October 31, 2001. (*Id.*, Doc. 5.)

Based on the charges in the indictment, Petitioner was arrested on May 3, 2005, made his initial appearance before a magistrate judge, and was released on a $2,500 unsecured bond. (*See* Clerk's Docket Sheet, Case No. 5:05-cr-32, Entries 5/03/05.) The Court granted Petitioner bond on the conditions that he "not commit any offense in violation of federal, state or local law while on release in this case," (Case No. 5:05-cr-32., Doc. 11, at ¶ 1), and "have no contact, direct[ly] or indirect[ly], with any persons who are or may become a . . . potential witness in the subject investigation or prosecution, including but not limited to co-defendants." (*Id.* ¶ 7(i)).

On May 20, 2005, attorney David Freedman entered a general appearance on behalf of Petitioner. On December 22, 2005, Petitioner and David Freedman met to discuss and sign a plea agreement. On January, 3, 2006, Petitioner entered into a plea agreement with the Government wherein he agreed to plead guilty to the charge of conspiracy to possess with intent to distribute at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846.

As part of the plea agreement, Petitioner acknowledge that based on the § 851 Notice he faced a mandatory minimum sentence of ten years imprisonment and a maximum of life imprisonment, (Case No. 5:05-cr-32, Doc. 75 ¶ 4); that in determining Petitioner's sentence the Court could consider all pertinent information as "relevant conduct" pursuant to U.S.S.G. § 1b1.3, (*id.* ¶ 3)*;* that the Court had the final discretion to impose any sentence up to the statutory maximum; that Petitioner specifically understood that any estimate of a likely sentence from any source, including defense counsel, was a prediction, not a promise; and that no recommendations or agreements by the Government were binding upon the Court, (*id.* ¶ 6). Likewise, the parties stipulated that the amount of methamphetamine that was known to, or reasonably foreseeable by, Petitioner was in excess of 50 grams but less than 500 grams. (I*d.* ¶ 7a.) Furthermore, the agreement provided that Petitioner and his counsel warranted that they had discussed Petitioner's

right to challenge his conviction and/or sentence through an appeal or post-conviction action and that, in exchange for the concession made by the United States, Petitioner waived his right to contest his conviction or sentence on appeal or by collateral attack, except on the bases of ineffective assistance of counsel, prosecutorial misconduct, or the sentence to the extent that one or more findings on Guidelines issues were inconsistent with the explicit stipulations set forth in the plea agreement or on a basis which the district judge certified as requiring review by the Court. (*Id.* ¶ 20.)

On January 18, 2006, Magistrate Judge David Keesler conducted a hearing to accept Petitioner's guilty plea, pursuant to Federal Rule of Criminal Procedure 11. (*See* Transcript of Rule 11 Proceedings at 1-26.) The record shows that Jones Byrd appeared on behalf of David Freedman as counsel for Petitioner. (*Id.* at 2.) During the hearing, Magistrate Judge Keesler specifically described the elements of the offense to which petitioner was pleading guilty and the maximum and mandatory minimum penalties he faced, and Petitioner affirmed that he understood the charge and potential penalties. (*Id.* at 6-7.) Petitioner then affirmed that he understood that the sentence imposed might be different than any estimate of the sentence provided by his attorney or recommended by the Government and that if the sentence imposed was longer than that which he expected, he would not be permitted to withdraw his plea. (*Id.* at 10.) In response to whether he was, in fact, guilty of the offense to which he was pleading guilty, Petitioner replied, "[y]es, sir." (*Id.* at 12.)

Government counsel then recited the terms of the plea agreement entered into with Petitioner and specifically noted that Petitioner was waiving his right to appeal, except with respect to allegations of ineffective assistance of counsel, prosecutorial misconduct, or the sentence to the extent it deviated from the express terms of the plea agreement. (*Id.* 12-16.)

Petitioner affirmed that Government counsel had correctly stated the terms of the plea agreement and specifically affirmed that he had discussed his right to appeal with counsel and understood that he had waived his right to appeal his conviction or his sentence. (*Id.* at 16-17.) Likewise, Petitioner affirmed that he was waived his right to challenge his conviction and/or sentence in a post-conviction proceeding. (*Id.* at 17.)

In response to additional questioning by the Court, Petitioner stated, under oath, that his guilty plea was voluntarily made and was not the result of threats, intimidation, or force, and that no promises had been made to him other than those contained in his plea agreement; that he had been afforded ample time to discuss possible defenses with his attorney and had told counsel everything he wanted him to know about his case; and that he was satisfied with the services of his attorney. (*Id.* at 22-23.) Petitioner's attorney, Mr. Byrd, acknowledged to the Court that he had reviewed with Petitioner each of the terms of the plea agreement; that he knew that Mr. Freedman had reviewed the terms of the plea agreement with Petitioner in great detail, and that he (Mr. Byrd) believed Petitioner understood the terms of the plea agreement. (*Id.* at 24.) Based on Petitioner's answers to each of its questions, and based on the representations and answers from counsel, the Court accepted Petitioner's guilty plea, finding that Petitioner's plea was knowingly and voluntarily made with an understanding of the charges, the potential penalties, and the consequences of the guilty plea. (*Id.* at 25.) Petitioner also signed the Entry and Acceptance of Guilty Plea (Rule 11 Proceeding), which memorialized his oral responses to the Court's inquiry. (Case No. 5:05-cr-32, Doc. 84.)

On March 1, 2006, the Grand Jury returned a second indictment against Petitioner, this time charging him with attempting "to obstruct, influence and impede and official proceeding" by sending text message instructions to a prospective witness, instructing that witness to "stick to

the story" and provide false information regarding the illegal possession of a firearm in furtherance of a drug trafficking crime by Co-Defendant Jason Plemmons, all in violation of 18 U.S.C. § 1512(c)(2). (*See* Case No. 3:06-cr-45, Doc. 3.) Although Petitioner was initially represented by court-appointed counsel, on April 28, 2006, David B. Freedman filed a notice of appearance as counsel for Petitioner. (*Id.* at 12.)

On May 12, 2006, Petitioner entered into a second plea agreement with the Government, agreeing to plead guilty to the obstruction of justice charge. (*Id.* at 14.) This agreement contained nearly identical provisions to the first agreement, but also included a provision stipulating that the parties agreed "that the sentence imposed for [the obstruction of justice] conviction [would] be combined for sentencing purposes with the sentence (to be) [*sic*] imposed" in the drug conspiracy case. (*Id., Doc. 14* ¶ 7a.)

On June 7, 2006, Magistrate Judge Keesler conducted a Rule 11 hearing an colloquy concerning Defendant's guilty plea on the obstruction of justice charge. (*See* Transcript of Rule 11 Proceedings at 1-17.) Again, the record shows that Jones Byrd appeared on behalf of David Freedman as counsel for Petitioner at the Rule 11 proceedings. (*Id.* at 2.) During the hearing Magistrate Judge Keesler recited the elements of the obstruction of justice offense together with the maximum penalties to which Petitioner would be subject and Petitioner affirmed that he understood the charge against him and the penalties he faced. (*Id.* at 5-6.)

Petitioner also affirmed, as he did in his earlier Rule 11 proceeding, that he understood that the Court could not determine his sentence until after preparation of the PSR. (*Id.* at 7.) Petitioner also affirmed that he was, in fact, guilty of the obstruction of justice charges. (*Id.* at 9.) After Government counsel summarized the terms of the plea agreement, including the waiver of Petitioner's right to appeal or collaterally attack his conviction and/or sentence, except on

specific grounds, Petitioner affirmed that he understood the terms of the agreement and the waiver of his right to appeal or challenge his conviction and/or sentence in a post-conviction proceeding (*Id.* at 14.).

After asking Petitioner a final series of questions concerning the voluntariness of his plea, Magistrate Judge Keesler accepted Petitioner's plea, finding that he was pleading guilty knowingly and voluntarily, with an understanding of "the charges, potential penalties, and consequences of his plea." (*Id.* at 15-16.) At the conclusion of the hearing, Petitioner signed an Entry and Acceptance of Guilty Plea, again acknowledging that he was guilty of the obstruction of justice offense and understood the waiver of his right to appeal set forth in the plea agreement. (Case No. 3:06-cr-45, Doc. 16.)

On August 10, 2006, in preparation for Petitioner's sentencing hearing, the Probation Office completed a presentence report ("PSR"). In the PSR, the Probation Officer began with an offense level of 30 as to the drug conspiracy, based on the drug quantity recited in the plea agreement. (*Id.* at 33.) The Probation Officer then increased Petitioner's offense level by six levels based on Petitioner's statements during the presentence interview admitting that he manufactured methamphetamine inside of a residence in which children reside, resulting in an adjusted offense level of 36. (*Id.* ¶¶ 34, 38.) The Probation Officer noted that he was not recommending an obstruction of justice adjustment with respect to the drug conspiracy offense, because although Petitioner attempted to obstruct or impede the administration of justice, he had been charged separately for that offense and pleaded guilty to it. (*Id.* at ¶ 37.) The Probation Officer also noted that he was not recommending a reduction in Petitioner's offense level for an acceptance of responsibility because of his attempted obstruction of justice, conduct indicating that Petitioner had not accepted responsibility for his criminal conduct. (*Id.* at ¶ 52.) With respect

to the obstruction of justice offense, the Probation Officer began with an offense level of 14 and provided for no adjustments. (*Id.* at ¶¶ 39-44.) Pursuant to U.S.S.G. § 3D1.4, the combined adjusted offense level was 36, (*Id.* at ¶¶ 39-44.), therefore, based on an offense level of 36 and a criminal history category of III, the Probation Officer noted that the Guidelines suggested a range of imprisonment between 235 and 293 months. (*Id.* at ¶ 86.)

This Court conducted Petitioner's sentencing hearing on November 6, 2006. (*See* Transcript of Sentencing at 1-13.) Prior to sentencing the Petitioner, this Court asked Petitioner whether he understood the charges to which he was pleading guilty, the potential penalties, and the consequences of his guilty plea. (*Id.* at 3.) Petitioner then affirmed he was pleading guilty freely and voluntarily. (*Id.*) This Court then accepted Petitioner's guilty plea. (*Id.*) Petitioner asserted no objections to the PSR but argued in favor of a variance below the applicable Guidelines range on the basis of his cooperation with investigating agents and the fact that he had provided the evidence of methamphetamine manufacturing when children were present upon which the six-level enhancement was based. (*Id.* at 7-8.) Petitioner also noted that he had completed a substance abuse treatment program and was baptized while incarcerated. (*Id.* at 8.) Finally, Petitioner argued for a lower sentence, noting that his family required serious medical care, care that Petitioner provided. (*Id.* at 8-9.) Nevertheless, Petitioner conceded that "the guidelines were properly calculated." (*Id.* at 8.) In response to Petitioner's plea for a lower sentence, Government counsel agreed to a sentence at the low end of the Guidelines but objected to a variance sentence. (*Id.* at 9.) This Court ultimately found that there was no factor "that would appear to justify a variance sentence," and accordingly sentenced Petitioner to a term of 234 months of imprisonment as to each offense to which he was pleading guilty, to run concurrently. (*Id.* at 11.) This Court entered its judgment on November 6, 2006, and Petitioner

filed a timely notice of appeal.

On June 15, 2007, David Freedman filed an appellate brief on behalf of Petitioner, arguing that the appellate waiver provision in the plea agreement was unenforceable and a sentence at the low end of the guideline range was unreasonable. The Government responded by arguing that Petitioner waived his right to appeal and that Mr. Freedman had conceded that the guidelines were properly calculated and, as such, presumptively reasonable. On October 15, 2007, the Fourth Circuit dismissed the appeal, noting that Petitioner was old enough and experienced enough in criminal procedure to understand the waiver.

On October 29, 2007, Mr. Freedman filed petitioner for rehearing and rehearing en banc. On December 18, 2007, those petitions were denied. On December 26, 2007, the mandate was issued. By letter dated January 25, 2008, Mr. Freedman informed Petitioner that he would not file a petition for a writ of *certiorari* with the Supreme Court because there are no grounds for such a petition and to file such a petition would be frivolous and that Petitioner could file such a petition with the assistance of Prison Legal Services. Petitioner did not file a petition for writ of *certiorari*.

On March 15, 2009, Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 alleging a host of ineffective-assistance-of counsel claims at all stages of the proceedings, prosecutorial misconduct, and breach of the plea agreement.

## II. DISCUSSION

### A. Whether Petitioner's Motion is Defective

The Government first argues that Defendant's motion under 28 U.S.C. § 2255 is defective and should be dismissed because Petitioner Wells failed to sign his 2255 motion or attach a sworn declaration to his motion. Rule 2 of the Rules Governing Section 2255

Proceedings requires that a motion pursuant to that section "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." Rule 2(b)(5), Rules Governing Section 2255 Proceedings. On July 27, 2009, Petitioner Wells filed a Motion for Leave so that he could supplement his petition with an attached verification. This Court will allow Petitioner to supplement the record with the affidavit he submitted. *See Kafo v. United States*, 467 F.3d 1063 (7th Cir. 2006) (holding that the district court should have instructed defendant to amend his 2255 petition by submitting it under oath or by attaching an affidavit, rather than deny it without evidentiary hearing). Accordingly, this Court rejects the Government's argument that Defendant's motion should be dismissed due to failure to sign his 2255 motion.

**B. Whether Petitioner is Procedurally Barred From Relief under 28 U.S.C. §§ 2255**

Petitioner alleges that the prosecution of the criminal cases against him demonstrates the "absence of the democratic constraints and procedural safeguards guaranteed by the Constitution." Petitioner also challenges his sentence, alleging breach of the plea agreement and prosecutorial misconduct because he did not receive a reduction in his offense level of acceptance of responsibility, immunity from prosecution for voluntarily admitting that he manufactured methamphetamine in a residence where minors were present, and a downward departure for substantial assistance to the Government. Petitioner's challenges to his guilty plea and the reasonableness of his sentence have been rejected by the Fourth Circuit.

Issues previously decided on appeal from conviction or sentence cannot be recast in the form of a § 2255 motion. *See United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004), *cert. denied*, 126 S. Ct. 330 (2005); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (explaining that defendant cannot relitigate issues previously rejected on direct appeal).

Accordingly, this Court finds that the Fourth Circuit has decided all issues grounded in Petitioner's challenges to his guilty plea and the reasonableness of his sentence. Petitioner's challenges based on prosecutorial misconduct and ineffective assistance of counsel, however, were not decided by the Fourth Circuit and will be addressed below.

### C. Petitioner's Claim of Prosecutorial Misconduct

Petitioner seeks relief from his sentence based on allegations of prosecutorial misconduct. This Court reviews claims of prosecutorial misconduct "to determine whether the conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Sheetz*, 293 F.3d 175, 186 (4th Cir. 2002) (quoting *United States v. Morsley*, 65 F.3d 907, 913 (4th Cir. 1995). The two prongs for the test of prosecutorial misconduct are: (1) whether the prosecutor's conduct was in fact improper, and (2) whether the prosecutor's conduct "prejudicially affected the [defendant's] substantial rights so as to deprive him of a fair trial." *Id.* (citing *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993)).

Petitioner claims that the Government failed to advise Petitioner truthfully concerning the immunity, acceptance of responsibility, and assistance provisions of the plea agreements. A review of the record reveals otherwise.

During each of the Rule 11 proceedings, Petitioner acknowledged his understanding of all the terms of the plea agreements, counsel acknowledged his understanding of all the terms of the plea agreements, and counsel acknowledged that the plea agreements had been discussed with Petitioner and that counsel believed Petitioner understood the terms of the plea agreement. Moreover, the plea agreement plainly provided that information disclosed would not be used against him in other criminal proceedings, and they have not been. Accordingly, Petitioner cannot prove that the prosecutor's conduct was in fact improper. Even if Petitioner could meet

the first element of prosecutorial misconduct, Petitioner's claim would still fail because he cannot meet the second element, requiring Petitioner to prove that the Prosecutor's conduct prejudicially affected the Defendant's rights. After reviewing the transcripts, filings, and motions in this case, this Court finds no such misconduct. Accordingly, this Court rejects Petitioner's prosecutorial misconduct claim.

### D. Petitioner's Claim of Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. *See* U.S. CONST., art. VI. In order to establish a claim of ineffective assistance of counsel, a petitioner must show: (1) a deficient performance by counsel, and (2) that the deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In evaluating whether counsel is ineffective, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992). Moreover, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . *Strickland* if the 'result of the proceeding was fundamentally unfair or unreliable.'" *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). Ultimately, the petitioner "bears the burden of proving *Strickland* prejudice. *Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d a 1430-31).

Additionally, in the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). If a petitioner fails to meet his burden of demonstrating prejudice, a "reviewing court need not

consider the performance prong." *Fields*, 956 F.2d at 1290 (citing *Strickland,* 466 U.S. at 697)*.*

In evaluating post-guilty plea claims of ineffective assistance, statements made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceeding and satisfaction with counsel, are deemed binding in the absence of "clear and convincing evidence to the contrary." *Fields*, 956 F.2d at 1299. Indeed, such statements "constitute a formidable barrier" to a subsequent attack. *Blackledge*, 431 U.S. at 73-74. Once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily offered, absent compelling reasons to the contrary, the validity of the plea and the petitioner's corresponding responses are deemed to be conclusively established. *Via v. Superintendent, Powhatan Correctional Center*, 643 F.2d 167 (4th Cir. 1981).

In the present case, Petitioner does not claim that absent counsel's errors he would have proceeded to trial nor, for that matter, that he had a viable defense to present at such trial. Such failure stands as an initial barrier to Petitioner's claims. *Slavaek v. Kinkle*, 359 F. Supp. 2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffective assistance with respect to the prejudice prong based on petitioner's failure and inability to argue that but for the alleged errors, he would have insisted on trial or a different guilty plea).

While Petitioner frames his arguments in terms of ineffective assistance of counsel, the gravamen of Petitioner's § 2255 motion is his dissatisfaction with his sentence, specifically, the six-level sentencing enhancement for cooking methamphetamine under such circumstances as to create a substantial risk of harm to the life of minor children and the fact that he did not receive a three-level reduction from his offense level for acceptance of responsibility on the obstruction-of-justice charge. It is well settled that a criminal defendant is not permitted "to recast, under the guise of collateral attack, questions fully considered" on direct review. *Boeckenhaupt*, 537 F.2d

at 1183. As such, to the extent that Petitioner's ineffective assistance of counsel claim is based on dissatisfaction with his sentence, such a claim is barred. To the extent that Petitioner's claims are based on allegations of actual ineffective assistance of counsel, they are discussed below.

## 1. Claims of Ineffective Assistance of Counsel in the District Court

Petitioner alleges that his father originally retained David Freedman to represent Petitioner in the federal drug case, 5:05-cr-32, but that Mr. Freedman spent little time discussing the case with him and "was essentially AWOL" from Petitioner's case subsequent to the signing of the plea agreement. (Motion at 24.) Petitioner states that he and counsel discussed the attorney's fee, pleading guilty, and providing assistance in the investigation and prosecution of other individuals. Yet, he contends that Mr. Freedman failed to adequately explain to him the provisions of the plea agreements, the implications of pleading guilty, and how the sentencing guidelines could effect his sentence, failed to explain the meaning of "telling the truth" under the plea agreement, failed to negotiate a plea agreement favorable to Petitioner, and also failed to advise Petitioner of the sentencing enhancement for cooking methamphetamine in the presence of minors.

Additionally, Petitioner claims that Mr. Freedman failed to explain to Petitioner the "truth" concerning immunity, acceptance-of-responsibility, and substantial assistance provisions of the plea agreement and the ramifications of obstruction of justice considerations, leaving Petitioner unaware that by cooperating and providing truthful information about his involvement in the charged offenses he risked a significant increase in his sentence. Petitioner also alleges that Mr. Freedman failed to appear at the Rule 11 inquiries, leaving him to be represented by Mr. Byrd, who was unfamiliar with Petitioner's cases and who failed to assist Petitioner in understanding the implications of the plea agreements and the effects of the Sentencing

13

Guidelines. Further, Petitioner alleges that Mr. Freedman failed to assist him in obtaining the benefit of substantial assistance, failed to discuss the PSR with him, and failed to argue for specific performance of the plea agreement on the obstruction-of-justice violation at sentencing, namely, that Petitioner was entitled to acceptance of responsibility, immunity from sentencing enhancement for providing self-incriminating information to the Probation Officer, and downward departure for substantial assistance to the Government. The evidence of record contradicts Petitioner's claims.

### A. Counsel's Performance Regarding the Plea Agreements and Guilty Pleas

First, Petitioner had two choices in connection with the charges against him in case numbers 5:05-cr-32 and 3:06-cr-45: proceed to trial or plead guilty. The record establishes that during both Rule 11 hearings, Petitioner acknowledged to the Court that he had consulted with counsel prior to deciding to plead guilty. (Transcript of Rule 11 (5:05-cr-32) at 5; Transcript of Rule 11 (3:06-cr-45) at 4.)

Second, during each Rule 11 proceeding, Petitioner acknowledged that he had conferred with his attorney regarding how the Sentencing Guidelines might apply to his case. (Transcript (5:05-cr-32) at 9; Transcript (3:06-cr-45) at 6-7.) Third, during each Rule 11 proceeding, the prosecutor summarized the terms of the plea agreement, and Petitioner, under oath, acknowledged his understanding and agreement to the terms of the plea agreement.  (Transcript (5:05-cr-32) at 12-16; Transcript (3:06-cr-45) at 9-15.) Likewise, in each Rule 11 proceeding, Petitioner acknowledged, under oath, that he had heard and understood all parts of the proceeding, desired to plead guilty, and that he was satisfied with the services of his attorney. (Transcript (5:05-cr-32) at 23; Transcript (3:06-cr-45) at 15.) An "appropriately conducted Rule

11 proceeding . . . must be recognized to raise a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc).

The representations made by the defendant and his attorney when entering a guilty plea, as well as any factual findings made by the judge accepting the guilty plea, constitute a formidable barrier for the defendant to overcome in any later collateral proceeding. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Critically, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

Applied to this case, both the statements of Defendant and his counsel during his Rule 11 hearings and his counsel's sworn affidavits refute Defendant's claim that he was not adequately informed at the time he entered his guilty plea. More specifically, in response to the Court's inquiry, Mr. Byrd advised the Court that he had reviewed each of the terms of the plea agreement in the case 5:05-cr-32 briefly with Petitioner that he knew that Mr. Freedman had reviewed the terms of the plea agreement with the Petitioner in greater detail, and that Mr. Byrd was satisfied that Petitioner understood the terms of the plea agreement. (Transcript (5:05-cr-32 at 24.) Similarly, in response to the Court's inquiry at Petitioner's Rule 11 and guilty plea proceeding for obstruction of justice, Mr. Byrd advised the Court that Mr. Freedman had reviewed each of the terms of the plea agreement with Petitioner as evidenced by Mr. Freedman's signature on the agreement, and that he (Mr. Byrd) was satisfied that Petitioner understood the terms of the plea agreement. (Transcript (3:06-cr-45) at 15-16.)

The representations are buttressed by Mr. Freedman's affidavit, in which he states that subsequent to reviewing the Government's discovery, he determined that it was not in

Petitioner's best interests to proceed to trial; that he personally discussed his findings and the provisions of the plea agreement with Petitioner; and that Petitioner agreed with the course of action, and signed the plea agreement. Mr. Freedman also states that he believes Petitioner fully understood the implications of his plea. Additionally, Mr. Freedman states that Mr. Byrd, an associate of Mr. Freedman at the time, was an experienced attorney and very capable of assisting Petitioner at the Rule 11 inquiries.

Next, Petitioner alleges that Mr. Freedman failed to negotiate a plea agreement favorable to him. Specifically, he claims that counsel failed to preserve Petitioner's rights to seek a variance at sentencing rather than a departure through corrections to the guidelines calculations. The record shows that at sentencing, however, Mr. Freedman did argue for a variance sentence below the applicable guidelines range pursuant to 18 U.S.C. § 3553, asserting that the sentencing guidelines were unreasonable in light of Petitioner's circumstances. (Transcript of Sentencing at 5-9; *see also* Def. Exh. A at 3.) The Government argued against such a sentence, but agreed to a sentence at the low end of the guidelines range. (*Id.* at 9-10.) After considering Defendant's counsel's arguments in favor of a downward variance sentence, this Court held that based on the circumstances of the case, there was no factor "to justify a variance sentence." (*Id.* at 10-11.)

*B. Counsel's Performance Regarding Explaining the Scope of Immunity*

Next, Petitioner asserts that Mr. Freedman failed to advise him that he was forbidden to have contact with Ms. Caudle or any other government witness – which caused him to make bad decisions and which, in turn, resulted in a lost opportunity to testify as a Government witness, loss of the possibility of a § 5K1.1 downward departure motion for substantial assistance, and indictment for obstruction of justice. Petitioner argues that because the plea agreement in case 5:05-cr-32 gave him immunity, he did not know that he was prohibited from having contact with

Ms. Caudle or other government witnesses and that counsel did not explain to him the true meaning of the immunity provision. Again, the evidence of the record contradicts Petitioner's assertions.

First, the record shows that on May 3, 2005, Petitioner was released on a $25,000 unsecured bond at which time the Court put him on notice that one of the conditions of his release on bond was that he have no contact with potential witnesses in the investigation of the pending charges, "including but not limited to co-defendants." (Case No. 5:05-cr-32, Doc. 11.) Petitioner's signature appears on the Order Setting Conditions of Release acknowledging his understanding of the conditions of release. (*Id.* at 3.) Second, Mr. Freedman states in his affidavit that he repeatedly warned Petitioner against contacting any co-defendants. (Exh. A at 1.) Petitioner's contention that he did not understand the meaning of the immunity provision of the plea agreement is refuted by the evidence, especially considering his "rather extensive experience with the criminal justice system." *Wells*, 250 Fed. App'x. at 552.

*C. Counsel's Performance Regarding Explaining Substantial Assistance*

Next, Petitioner argues that Mr. Freedman failed to explain to him the meaning of substantial assistance. Again, Petitioner's claims is not credible in light of the relevant evidence in the record. During the Rule 11 inquiry, the substantial assistance provision of the plea agreement was summarized by the prosecutor (Transcript of Rule 11 (5:05-cr-32) at 15.) Petitioner swore that he understood the terms of the plea agreement, that he had signed the plea agreement, and that he had a copy of the plea agreement. (*Id.* at 17.) Absent compelling reasons to the contrary, the validity of the plea and the petitioner's corresponding responses are deemed to be conclusively established by the Rule 11 inquiry. *Via v. Superintendent, Powhatan Correctional Center*, 643 F. 2d 167 (4th Cir. 1981).

Additionally, the fact that Petitioner understood the meaning of substantial assistance is supported by Mr. Freedman's sworn affidavit that, very soon after Petitioner's indictment in the drug case, counsel was able to secure Petitioner's release on bond based on counsel's assurances to the prosecutor that Petitioner was willing to cooperate with the Government both informatively and proactively; that counsel constantly reminded Petitioner of the importance of his cooperation, particularly in light of Petitioner's criminal record and the fact that he was facing a mandatory minimum sentence, and that subsequent to Petitioner's indictment for witness tampering, counsel contacted the prosecutor to ascertain if Petitioner could still benefit from cooperation.

### D. Counsel's Performance Regarding Explaining the PSR

Next, Petitioner claims that counsel failed to discuss the PSR with him. Again, the evidence of record contradicts Petitioner's allegation. The sentencing transcript shows that Petitioner acknowledged reviewing the PSR with counsel. (Transcript of Sentencing at 4.) Similarly, Mr. Freedman's affidavit refutes Petitioner's claim. Mr. Freedman specifically states that he reviewed the PSR with Petitioner and believed the calculated sentence to be too harsh; however, considering Petitioner's conduct, the subsequent witness tampering and his untruthfulness at his debriefings, the only relief for which counsel could argue was a downward variance, which the Court denied.

### E. Counsel's Performance at Sentencing

Petitioner alleges that Mr. Freedman provided ineffective assistance of counsel at sentencing because he failed to move for specific performance of the plea agreement. More specifically, that he failed to advocate Petitioner's entitlement to immunity from the six-level enhancement for manufacturing methamphetamine in the presence of children, failed to advocate

Petitioner's entitlement of responsibility, and failed to argue Petitioner's entitlement to a downward departure for substantial assistance. The facts of the record, however, do not support Petitioner's claim.

First, as discussed above, the plea agreement did not provide Petitioner immunity from the Court's consideration of all the pertinent information as relevant conduct in determining Petitioner's sentence. Rather, Petitioner lost the opportunity for reduction for acceptance of responsibility at the moment he attempted to tamper with a witness, precluding him from being able to demonstrate by a preponderance of the evidence that he was entitled to a reduction. Even so, Petitioner's counsel argued at sentencing that Petitioner had increased his sentence exposure by providing self-incriminating information to the Probation Officer about cooking methamphetamine in the presence of minors in an effort to be forthright and truthful and that a downward variance was warranted. As such, to the extent that Petitioner's claim of ineffective assistance of counsel is based on his counsel's conduct at sentencing, such a claim is rejected.

## 2. Claims of Ineffective Assistance of Counsel on Appeal

Petitioner alleges ineffective assistance of counsel on appeal because Mr. Freedman failed to raise the issues of ineffective assistance of counsel, prosecutorial misconduct, and breach of plea agreement in opposition to the Government's motion to dismiss. Petitioner also claims that Mr. Freedman failed to advocate on appeal Petitioner's "lack of education, life skills and knowledge, experience or sophistication in dealing with serious drug offenses in federal court." Finally, Petitioner claims that Mr. Freedman failed to provide to Petitioner in a timely manner the materials necessary to file a writ of *certiorari* and failed to file a petition for writ of *certiorari* as counsel of record based "on the grounds that the court of appeals had departed so from the accepted and usual course of judicial proceedings as to call for an exercise of this

Court's supervisory power." (*Id.* at 22.)

Counsel is permitted wide latitude in determining which claims are most likely to succeed on appeal and are therefore worth bringing. *See Bell v. Jarvis,* 236 F. 3d 149, 164 (4th Cir. 2000) (en banc) (appellate counsel is accorded a "presumption that he decided which issues were most likely to afford relief on appeal.")(internal quotations omitted). Furthermore, there is no requirement that counsel assert all non-frivolous issues on appeal. *See Jones v. Barnes*, 463 U.S. at 745, 751-52 (1983). Indeed, "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* at 752.

Notably, Petitioner does not state that he contacted counsel requesting that certain issues be raised on appeal and, further, has offered no evidence that the issues he claims should have been raised are any more meritorious than those raised by appellate counsel. Moreover, Mr. Freedman states in his affidavit that he did not raise ineffective assistance of counsel or prosecutorial misconduct because he did not believe there was evidence of such issues. As such, Petitioner's claim of ineffective assistance of counsel with respect to the arguments raised on appeal fails.

### 3. Failure to File for Writ of *Certiorari*

Petitioner alleges that his appellate counsel erred by failing to file a petition for writ of *certiorari* in the United States Supreme Court subsequent to the Fourth Circuit's denial of Petitioner's motion for rehearing, provided inconsistent advice, and failed to send Petitioner the appellate materials until after the deadline for Petitioner to object to the motion to withdraw.

Unlike the mandatory jurisdiction of the courts of appeal in a direct criminal appeal, "[r]eview on a writ of *certiorari* is not a matter of right, but of judicial discretion." Supreme

Court Rule 10. While "indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, *Anders v. California*, 386 U.S. 738 (1967), that right does not extend to forums for discretionary review." *Austin v. United States*, 513 U.S. 5, 8 (1994). In the case of an unsuccessful appellant represented by counsel, the attorney's responsibilities are outlined in the plan adopted by the Fourth Circuit Judicial Council implementing the Criminal Justice Act of 1964. *See* 18 U.S.C. § 3006A.

The Fourth Circuit plan provides that "counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of *certiorari*. If the defendant, *in writing*, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant." Plan of the United States Court of Appeals for the Fourth Circuit, "In Implementation of the Criminal Justice Act," § V, ¶ 2 (September 17, 2007).

According to the exhibits accompanying Petitioner's § 2255 motion, Petitioner's appellate counsel complied with these requirements by sending Petitioner a letter dated January 25, 2008, advising Petitioner of his right to seek *certiorari* before the United States Supreme Court, informing him that in counsel's opinion it would be frivolous to file a petition for writ of *certiorari* because there were no grounds on which to proceed, advising Petitioner that if he desired to file a petition for writ of certiorari that he could do so on his own with the assistance of prison legal services, and enclosing a copy of counsel's motion to withdraw from representation of Petitioner.

Petitioner's exhibits also show that on January 30, 2008, counsel sent him a letter enclosing a copy of the Amended Motion to Withdraw filed in the Fourth Circuit Court of Appeals, again advising Petitioner that counsel believed it would be frivolous to file a petition

for writ of *certiorari* but advising him of his right to proceed pro se with the help of legal services of the prison system. Moreover, on February 26, 2008, Mr. Freedman sent Petitioner a letter chronicling the appellate materials filed on behalf of Petitioner.

Petitioner had 90 days from the issuance of the judgment on December 26, 2007, within which to file a petition for writ of *certiorari*, that is, until March 25, 2008. He does not state that he responded to appellate counsel's letters of January 25, 2008, January 30, 2008, or February 26, 2008. Critically, Petitioner neither alleges nor provides evidence that he instructed counsel *in writing* to file a petition for writ of *certiorari*. Petitioner's bare assertion that appellate counsel erred by failing to file a petition for writ of *certiorari* is insufficient to meet the *Strickland* test. Accordingly, because Petitioner failed to meet his burden, his claim of ineffective assistance of appellate counsel for failure to file a petition for writ of *certiorari* fails.

### III. CONCLUSION

**THEREFORE,** for the reasons stated herein, it is **ORDERED** that:

(1)  Petitioner's Motion for Writ of Habeas Corpus (Document #1) is **DENIED.**

(2)  The United States' Motion for Summary Judgment (Document #6) is **GRANTED.**


Signed: March 30, 2011

Richard L. Voorhees
United States District Judge